DROGE ELEVATOR COMPANY, Appellant, v. W. P. BROWN COMPANY, Appellee.

**EVIDENCE:** Laws of Sister State—Constitutions—Presumption.
1  This court has held that in the absence of a showing to the contrary, the presumption will be indulged that the common and statute law of a sister state is the same as it exists in this state. The court declines to go farther. No presumption will be indulged that the *Constitution* of a sister state is the same as the Constitution of Iowa. So held where the court had under consideration the validity of a judgment for $400 rendered by a justice of the peace in a sister state.

**APPEAL AND ERROR:** Questions Reviewable on Appeal—Failure to Raise Question in Lower Court.
2  A question not raised in the lower court is not reviewable on appeal. So held where the validity of a judgment of a sister state, based on constitutional considerations, was not raised in lower court.

**JUDGMENT:** Of Justice of the Peace—Collateral Attack—Regularity of Proceeding—Presumption.
3  When it appears that a justice of the peace acquired jurisdiction of a proceeding *in rem,* the same presumption exists in favor of the regularity of the subsequent

proceedings therein as would obtain under similar circumstances in support of the judgment of a court of record.

PRINCIPLE APPLIED: The court had under consideration the validity of a judgment *in rem* of a justice of the peace of a sister state. It was objected that the judgment record failed to show that 'the defendant in attachment was notified of the demand for judgment against the garnishee. *Held*, it was sufficient to say that the judgment did not show affirmatively that such notice was *not* given.

**FRAUD: Judgment—Manner of Obtaining—Action for Damages—**
**4 Quantum of Proof.** Whether one may maintain an action *for damages* only against a defendant because of the manner in which defendant obtained a judgment against plaintiff (for instance by perjury) *quaere*, but if such action can be maintained, the general rule as to the quantum of proof necessary to establish fraud certainly prevails, to wit: The evidence must be clear and satisfactory. Evidence reviewed and *held* insufficient to show fraud.

*Appeal from Pottawattamie District Court.*—HON. THOMAS ARTHUR, Judge.

WEDNESDAY, APRIL 7, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

ACTION at law to recover damages for the alleged conversion of personal property and money belonging to the plaintiff. There was a directed verdict for defendant and plaintiff appeals.—*Affirmed.*

*Flickinger Bros.,* for appellant.

*Mayne & Green,* for appellee.

WEAVER, J.—Plaintiff alleges that defendant wrongfully converted to its own use ''the proceeds of a carload of ground feed'' belonging to plaintiff. More specifically, the circumstances on which this claim is grounded are substantially as follows:

Plaintiff, a dealer doing business at Council Bluffs, Iowa, consigned to defendant, a dealer at Memphis, Tennessee, a

shipment of feed subject to "Memphis inspection". On its arrival at Memphis, what is spoken of as a "track inspection" was had and the feed pronounced to be in good order. Defendant at once shipped the car to a customer in Mississippi, who found the feed in a heated condition and it was promptly returned to the defendant at Memphis. Defendant, who had already remitted to plaintiff the price of the shipment, notified plaintiff of the bad condition of the feed and asked to be advised of plaintiff's wishes in the matter. Plaintiff then sent its agent, Mr. Schmauser, to Memphis to look after its interests and furnished him with a check payable to defendant for a refund of the price which had been paid for the feed. It also wrote defendant, requesting that it "handle the chops to the very best advantage." Upon his arrival at Memphis, Schmauser found the feed had been unloaded into defendant's warehouse and, satisfying himself that the claim was just, delivered the refunding check. He also sold the feed to defendant at a materially reduced price and received defendant's check for $420. Plaintiff repudiated the settlement so made, returned to defendant the check for $420 and refused payment of its own check which it had sent to the defendant by Schmauser. As reason for this repudiation, plaintiff alleged that defendant had concealed from Schmauser the fact that the "track inspection" had shown the feed to be in good condition on its arrival in Memphis and also concealed the further fact that the car had been shipped to another point and then returned to Memphis before complaint was made of the condition of the shipment. No further agreement or settlement appears to have been arrived at and, at a later date, defendant instituted an attachment suit against plaintiff in a justice's court at Memphis and caused one Wyatt to be garnished as a debtor of plaintiff herein. Wyatt, who was indebted to plaintiff herein for another carload of feed, answered the garnishment, admitting his indebtedness. After a continuance of six months and publication of notice, no appearance having been made, a de-

fault was entered against the defendant therein (plaintiff herein) and judgment rendered confirming the attachment and requiring the garnishee to pay over the amount of his admitted indebtedness to be applied in payment of the claim for the collection of which that action was begun. Wyatt performed the judgment on his part and the money so realized was applied in satisfaction of the claim of the plaintiff therein (defendant herein). Plaintiff, refusing to recognize the validity of the attachment proceeding, brings this action to recover damages, alleging the facts substantially as we have stated them and averring that by reason thereof defendant has converted to its own use the proceeds of the car of feed sold to Wyatt. Jurisdiction of the controversy was acquired in this state by attachment levied upon a carload of oats found in Pottawattamie county, belonging to the defendant. Defendant denies the petition and sets up a counterclaim for damages for the alleged wrongful attachment of its property.

The trial below developed very little more than is found in the foregoing statement. After hearing the evidence, the court reached the conclusion that the plaintiff was concluded by the judgment in the Tennessee court and sustained the defendant's motion for a directed verdict in its favor.

I. The appellant assigns three alleged errors of the trial court as grounds for reversal. The real point presented by these three assignments may be stated in the single proposition that the Tennessee court had no jurisdiction of the attachment proceedings wherein Wyatt was garnished, and that the judgment entered therein, requiring Wyatt to pay into that court the amount of his indebtedness to plaintiff was void and of no effect. In support of this contention, it is said in argument that neither the Constitution of the state of Tennessee nor its laws bearing upon the jurisdiction of justices of the peace have been offered in evidence, and counsel urge that, under such circumstances, we are required to assume that they are in this respect like the Constitution and statutes

1. EVIDENCE: laws of sister state: constitutions: presumption.

of Iowa. Starting with this assumption, it is pointed out
that the judgment entered by the Tennessee court was for
more than $400, an amount beyond the jurisdiction of a jus-
tice's court in Iowa, and that such judgment, if rendered by
a justice of the peace in this jurisdiction, would be void upon
its face. If appellant is correct in its premises that, in the
absence of evidence as to the Constitution and statutes of the
state of Tennessee, we must treat them as being identical with
our own, then, of course, further discussion upon this phase
of the argument is unnecessary, and the point that the Tennes-
see judgment is void would have to be conceded, if the con-
stitutional question is really in the case. But we are not
prepared to go to that extent. The rule which appellant seeks
to apply at this point doubtless had its origin in judicial
recognition of the fact that the rules and principles of the
common law prevail in substantially all of the states of our
Union; hence, where litigation has occurred in one state over
contracts made or dealings had or acts done in other states,
it has been thought not unreasonable to assume, in the ab-
sence of evidence to the contrary, that judicial interpretation
of common-law rules and principles is uniform in all juris-
dictions. This, in the opinion of the writer, is as far as the
assumption of uniformity should ever have been carried; but
it is to be admitted that we have at times exceeded this limita-
tion and given it application to statutory law, though usually
without discussion. As this extension of the doctrine has oc-
casioned no apparent injustice, we think it better not to
overrule the precedent thus established, but we are not willing
to follow counsel in still further expanding it and making it
applicable also to the provisions of the Constitutions of the
several states. We may, of course, assume that every state
Constitution provides for a republican form of government
and is otherwise in harmony with the Federal Constitution;
but beyond that, there is no reason why we should take it for
granted that the fundamental law of one state is like that of
another. Indeed, it is a matter of common knowledge that in

other particulars there is little, if any, uniformity. No fact is better known to courts and lawyers than that, with little or no exception, no two states are provided with the same judicial system, and that, with respect to the nature and extent of the jurisdiction conferred upon their several courts, each state is a law unto itself. Such being the case, we are of the opinion that for this court to ignore these well and universally known facts pertaining to a matter of general public interest and say that we will presume that the jurisdiction of a justice of a peace in Tennessee is hedged by the same constitutional limit which prevails in Iowa would be carrying the rule of presumption to an absurd extreme.

It must further be said that, while such presumption is strongly insisted upon in argument for the appellant, there seems to be no basis for it in the pleadings. The petition alleges the Tennessee judgment to be void and states the specific grounds of such claim to be, first, that the plaintiff herein was a nonresident of Tennessee and that no jurisdiction was acquired over it by process, appearance or otherwise, in said court; and second, that the judgment was obtained by fraudulent statements and representations made to the court as to the subject matter and by fraudulent statements and claim that plaintiff was indebted to defendant upon a false and unfounded cause of action. The constitutional question is not suggested by these objections and it cannot properly be raised here for the first time.

2. APPEAL AND ERROR: questions reviewable on appeal: failure to raise question in lower court.

Passing, then, to the question whether there appears in the record any such defect in the notice or process as will permit us to say that the Tennessee court did not acquire jurisdiction to render the judgment, we first notice that the judgment is *in rem* and not *in personam*. Jurisdiction of the *rem* was acquired by the levy of an attachment, a method which would have been regular even under our own practice. It being thus shown that the property (or its pro-

3. JUDGMENT: of justice of the peace: collateral attack: regularity of proceeding: presumption.

ceeds in the hands of the garnishee) was duly brought within the court's jurisdiction, the same presumption exists in favor of the regularity of the subsequent proceedings therein as would obtain under similar circumstances in support of the judgment of a court of record. It is shown that, there being no personal service and no appearance by plaintiff herein, the court continued the proceedings for a considerable period for the evident purpose of giving time for such appearance and then published notice thereof for four weeks before the default was taken and judgment entered condemning the fund found in the hands of the garnishee. It is objected at this point that there is no showing of notice to the attachment debtor of the demand for judgment against the garnishee, as is required by the practice in this state. It is sufficient to say that in this respect the record does not show affirmatively that such notice was *not* given, and even if we were to hold (which we do not) that the rule of our practice is applicable, we must, in the absence of a showing to the contrary, presume that the court satisfied itself that all necessary notice had been given to justify it in entering the judgment.

No complete authenticated transcript of the proceedings in the Tennessee court has been furnished us, but plaintiff's petition and the evidence shows that there was an attachment, a garnishment thereunder and subsequent proceedings in which judgment was entered, requiring payment by the garnishee and application of the proceeds to the discharge of the claim of the attachment plaintiff. The burden was on the plaintiff herein to show the invalidity of the adjudication, and upon this issue it failed to make a case. Indeed, if the judgment is an absolute nullity, as plaintiff claims, it is difficult to understand upon what theory it hopes to recover in this case. If the judgment was void, then its claim against Wyatt is in no manner barred or destroyed, and its right to collect the debt remains unimpaired. In such case, it has sustained no loss and can recover no damages.

The other basis of the claim stated in the petition is that

defendant obtained the judgment in the Tennessee court by fraud and perjury and is therefore liable in this action for the damages resulting therefrom to plaintiff. This necessarily implies that the judgment is valid and enforceable, so far as relates to jurisdictional considerations, but because of the manner in which it was obtained, its enforcement and collection constitute a wrong for which an action at law will lie to recover damages. If such an action is ever maintainable (a question we need not now undertake to decide) we are quite sure that no such case is here shown. To find that a party has been guilty of a fraud, and especially of a fraud of the gross and flagrant nature here charged, requires evidence of a clear and satisfactory character. Its finding should not be left to rest upon proof of facts which are as consistent with honesty and good faith as with evil intent. The original dispute between the parties was one which might easily arise in business transactions of a like nature between any two persons, both of whom are men of highest integrity. Whether plaintiff or defendant was to bear the loss occasioned by the injury to the shipment of feed was largely a question of law, upon which they naturally differed. It was once settled between them and the loss was adjusted in defendant's favor. For reasons which it doubtless thought satisfactory, plaintiff repudiated the settlement and, having the advantage of the possession of the proceeds, rested thereon. Defendant was helpless to enforce its claim except by coming to Iowa and suing in its courts or by awaiting its opportunity to find the plaintiff or some of its property within the jurisdiction of Tennessee. It chose the latter alternative, and that it did so has no tendency to prove that it acted fraudulently. It believed that it had an enforceable demand against the plaintiff, and, whether right or wrong, it had an unquestionable right to submit it to any court of competent jurisdiction. There is no showing whatever as to the evidence upon which it submitted its case to that court, and we must assume that its witnesses

4. Fraud: judgment: manner of obtaining: action for damages: quantum of proof.

in that proceeding told the truth, the whole truth and nothing but the truth. Whether, in our judgment, the truth so stated did or did not justify that court in sustaining the attachment is entirely immaterial. The court had jurisdiction to enter the judgment and its mistake, if any, was not a fraud upon plaintiff for which damages may be assessed against defendant in a collateral proceeding. In short, the record fails to show fraud which upon any tenable theory will deprive defendant of the benefit of the adjudication in the Tennessee court.

These conclusions render it unnecessary to consider other questions argued by counsel. For the reasons stated, we are united in the opinion that plaintiff failed to make a case entitling it to recover, and there was no error in directing a verdict for the defendant. The judgment below is, therefore, *Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.